### BEN BOYD v. THE STATE.

No. 17526. Delivered May 22, 1935.

540

The opinion states the case.

*A. C. Linne,* of Seguin, and *S. C. Cappel, Jr.,* of El Campo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, death.

The charge of the court in this case, as originally drafted, was excepted to, which exceptions then made are before us, as well as the exceptions taken apparently after the court may have made changes in the original charge. Exceptions to this amended charge are also in the record. A special charge was asked and refused, and this refusal excepted to, the exception being noted thereon. Aside from the above there appear no exceptions to any matter of procedure.

As we view this record it might not be amiss for us to say that we fail to find any facts which show or could have supported a belief on the part of appellant or of this court that deceased was acting with or encouraging anyone in any attack or threatened attack upon appellant at the time of or immediately before he cut deceased,—or at any other time. It

appears that appellant and an employee of deceased had had trouble in the afternoon prior to this killing, at which time appellant had a butcher knife in his possession, but if that fact was ever communicated to deceased it is not shown. It is also true that the trouble between appellant and said employee was renewed, and that in this difficulty appellant had gotten said employee, whose name was Saylors, down and was cutting him with said butcher knife, and Saylors was calling for help. It is made to appear that a man named Falks and deceased, hear, ing Saylor's calls for help, ran out of a building. Falks proceeded to get a club and strike appellant several times therewith. If deceased did anything, it is not shown or even suggested. It may be that appellant thought deceased was acting with Falks, but there is nothing to support such belief in this record. Falks testified that while he was striking appellant with his club or billy because the latter was cutting Saylors,— appellant jumped up and started at him, Falks, with his knife, at which time Falks jerked back and ran backwards some distance. Falks testified that appellant then turned and ran at deceased with his knife. Two other witnesses who had driven up close to the scene of the cutting said they saw appellant run at deceased with his knife, and that deceased had nothing in his hands and was doing nothing. Appellant cut deceased in the face, a blow which went down through the cheek and into the neck of deceased. Deceased seems to have fallen to the ground. His wife, who was not far away, ran and threw herself upon his body, as she says, to keep appellant from further cutting him. Appellant got her by the hair and pulled her back, and made further efforts to cut deceased, and did cut him, according to said wife, two or three other times. Deceased drew his feet up and kicked appellant away from him, and appellant then ran through the crowd and escaped. Deceased was taken immediately to a doctor's office where his wounds were treated, but infection set in and four or five days later he died. Doctors testified that everything was done for him that could be done.

Appellant offered no testimony, and did not take the witness stand himself. We have gone over the exceptions to the charge, and have examined the special charge requested and refused.

The special charge presented a wholly inaccurate statement of the law. Said charge sought to have the jury told that if they believed from the evidence that appellant cut and killed Robert Golightly, but further believed from the evidence, or

had a reasonable doubt thereof, that at the time of such cutting Robert Golightly, Oliver Falks, Felton Saylors or any other person or persons present in the crowd and acting with said parties, or either of them, did make a demonstration by acts, or by words coupled with such acts, which induced appellant to believe, from his standpoint at the time, that it was the purpose and intention of said Golightly, or said other party or parties, to attack the defendant and inflict death or serious bodily injury upon him, then appellant had the right to cut the said Robert Golightly, even though in such cutting he killed him, and that he would not be required to retreat in order to avoid the necessity, or apparent necessity, of cutting the said Golightly, or said other party or parties who may have then been making an attack upon him, and if they so found they should acquit the appellant. The further proposition was embodied in the charge that appellant had the right to cut and to continue to cut as long as there was danger, or apparent danger, from any of said parties in said crowd around him at the time of said homicide. The fact that appellant may have had a difficulty with Saylors, with whom he was fighting at the time Golightly came out of his place of business, would not give appellant the right to kill Golightly, who was doing nothing,—because of the acts of Saylors. Before any charge is required to be given, there must be testimony before the court and jury reasonably tending to support the theory embraced in such charge. There is not a thing in this record to support any theory at all on the part of appellant, or anyone else, that deceased Golightly had encouraged or aided or assisted Saylors; or that deceased had made or was about to make any attack upon appellant, or that deceased had made any demonstration by words or acts indicating such purpose on his part.

We find another special charge in the record in which the court was requested not to submit to the jury the issue of murder with malice, appellant's theory being that the testimony showed him at the time to be under the immediate influence of sudden passion arising from an adequate cause. We could not agree to a proposition that would take away from the jury their right, upon all the facts before them, to decide what was appellant's mental condition at the time he did the killing.

Appellant excepted to the court's charge for its failure to present his right of self-defense, he claiming same to be raised by the testimony. We are unable to see anything in this rec-

ord reasonably supporting any theory of self-defense. Mr. Golightly, who was killed, was not shown to have had any part in the previous difficulty between appellant and Saylors. He appears to have been only a bystander, and in the absence of something tending to connect him in some way, or to show that he did or said something to connect him with the difficulty, or support the proposition that he was acting with Saylors, we do not see the soundness of appellant's contention that there should have been a charge on self-defense.

Nor do we find anything in the record indicating that appellant was entitled to a charge on the theory of his right to arm himself at the time he went to the place where the difficulty between himself and witness Saylors was renewed. We do not believe there is any testimony in the case calling for the submission to the jury of any theory of temporary insanity. The State made no effort, nor did the defendant, to prove any threats on the part of Mr. Golightly which could have been used in any way as foundation for a claim of self-defense on the ground of threats.

The testimony in regard to death having resulted from the cutting inflicted by appellant, seems undisputed and in accord with what was said by each of the physicians who testified in the case. In this condition of the record we see no need for a charge submitting the theory of death resulting from any other cause than that of the cutting.

Appellant excepted to the court's charge because it did not submit to the jury the question of mistake of fact, it being his claim that appellant may have attacked Golightly under a mistaken belief that he was attacking Saylors or Falks. In the absence of any affirmation by appellant of any such mistake, and of any other testimony supporting such proposition, we fail to see any error on the part of the trial court in not submitting such issue.

Failing to find any error in the record, the judgment of the trial court will be affirmed.

*Affirmed.*

MORROW, P. J., absent.